May it please the court, Tim Tatarka of the District of Montana on behalf of the United States. I will try to keep an eye on the clock and reserve two minutes for rebuttal. Unlike the previous case, which involved the categorical approach, perhaps the ultimate example of a case for legal technicians, this case involves the reasonable suspicion for a Terry stop, something that this court has made clear is a common sense, non-technical analysis. In fact, this court pointed out in Valdez Vega that this analysis involves the factual and practical considerations of everyday life relied upon by reasonable and prudent individuals, not legal technicians. And the case goes on to say that the reason for that standard and the reason why the standard for reasonable suspicion is not particularly high. I agree with you there. We have a district judge who applied common sense and said the court can't bridge the connection between the conduct that's suspicious or odd in the lay sense, the conduct that is suspicious, such that it indicates particular criminal behavior. Tell me where the district court went wrong there. So the legal error there, and it's clear on excerpts of the record, page 10, the court says that Mr. Vasquez's conduct was odd, peculiar, and indicative of intoxication. Possibly. Possibly indicative. But what we're talking about is a standard here for reasonable suspicion, so I think that is a common sense conclusion there or inference. And the district court concluded that those were not criminal concerns. As we have pointed out on appeal, and, of course, we didn't bring this particular statute up before the district court, but it is a crime in Montana to be intoxicated under the influence of drugs. Was that argued below? That particular statute was not argued. Of course, we argued that there was reasonable suspicion here, and there doesn't have to be. There has to be reasonable suspicion of criminal wrongdoing, or that criminal wrongdoing may be, as the Supreme Court says, afoot. Exactly. So put aside for a second this intoxication issue. Is there any other reasonable suspicion that ‑‑ I mean, I must admit this looks crazy as heck, but is there any reasonable suspicion that this guy is under foot of criminal activity?  There's two major categories of concern here. The first is the concern that Mr. Castro's gun possession was illegal. How can you have that concern in a state where everybody is entitled to be armed, including small children? You absolutely can, Your Honor, and the reason for that, this is much different than the Brown case, it's because that's part of the totality of the circumstances. Here you have a concerted pattern of behavior concealing Mr. Vasquez's identity in connection with his gun possession. You have not only was he masked and wearing that concealing jumpsuit, he was ‑‑ and the weapon itself was concealed. In addition, he kept peeking at the weapon and trying to cover it up better, which is indicative of guilty conscience. There was something wrong about his gun possession. That goes on to the fact that he was dodging the 911 callers and then this very strange behavior with the lunges when the gun ‑‑ Lunges cuts both ways. I understand where the district judge was coming from when she said a burglar or thief would not walk down the street in a strange and noticeable costume or draw attention to himself by doing lunges down the main sidewalk. I mean, there's no question this was extremely strange, but that cuts both ways, right? The way he was dressed, the way he conducted himself was very unusual. And I think a common sense, non‑technical understanding of that, I don't think it cuts both ways. But you're not suggesting we review this case under a ‑‑ you can't be because you're lost below, under a deferential standard. No. We have to decide this de novo. It is de novo. So lots of people can have ‑‑ the district judge plainly has common sense. I'm not sure that we do, but we have to decide whether these factors ‑‑ We hope we do. I'm not sure I do. I'm not sure these factors added up together amount to reasonable suspicion. Exactly. And, again, I think the right comparison here is to the Willie case where there was reasonable suspicion there based on ‑‑ and, again, this isn't just very unusual behavior. This is very unusual behavior, erratic behavior in connection with possession of a firearm. And that the reasonable thing to do in that case is to make a brief investigatory stop and figure out what's going on. Is it that he's under the influence of drugs and carrying a concealed weapon? Is it that there's a mental health issue there that would raise public safety concerns and including criminal concerns of criminal endangerment? Is it that his gun possession is illegal? Would the police in this case have been entitled to ask Mr. Vasquez for his name without stopping him? Um, I ‑‑ well, I ‑‑ It's a strange case. Let me just tell you what my concern is. It's not really a search. The gun is in plain view. So nobody needs to suppress a search. It's the discovery of his identity that leads to the charges here. So I'm asking, could they have discovered his identity without the Terry stop? Uh, legally, yes. Practically, no. And I do think that is addressed in Willie, particularly at page 1098. And it's particularly telling here. So the officer does switch on his lights as he pulls through the intersection. But then he says, Sir, would you put down the weapon? And then has to repeat that five times before Mr. Vasquez complies. I'm asking a different question. I understand there's a Terry stop here. You don't contest that. My question is, and maybe it's an inevitable discovery question. Maybe it cuts the other way. I just want to know whether the police could have pulled up next to him and said, Sir, can you tell me who you are? And would he be required to answer under those circumstances? He would be. Under Montana law, I think that's a reasonable suspicion standard as well. Certainly if the officer had reasonable suspicion. You need reasonable suspicion to get somebody's ID. I believe that's the case. But I do want to go back to this point. We can see there's a Terry stop here. But it is important to note that a Terry stop doesn't begin until the individual acquiesces to the government's show of authority. So this court can use that time period, the fact that he did not comply, repeatedly did not comply. But his name, which is the critical information, doesn't come out until he complies. No, I agree with that. But in terms of the spectrum of what's suspicious about his behavior, in addition to the fact that he was masked, armed, and acting erratically, you can add the fact that he did not immediately comply with the law enforcement asking him to put down the weapon. Do you want to save some time? Unless there are any other questions. Thank you. May it please the Court, Van Arbinides on behalf of Fermin Vasquez from the Billings Office of the Federal Defenders. Under the present set of facts, the district court made the correct decision, albeit a tough decision. Mr. Vasquez's actions were passive compared to Supreme Court precedent, precedent of our circuit here, as well as the Third and Fifth Circuits. What should the police officers have done under this circumstance, in your view? They got a call about a guy wearing a bandana over his face with holes in the middle to look out of, with a weapon on his back under a blanket, conducting lunges, if you will, some sort of exercise. They look like deed-me-bends to me, but maybe they're lunges. On the street, two separate people call, so it's a reliable tip. They know he's doing what he's doing. And they come out here and they witness that he is, in fact, doing that. Under your view of the law, should they have said, well, nothing to see here, go on and live peaceably, Mr. Vasquez? Well, they— Because you're claiming they acted unconstitutionally. So I'm trying to figure out what a constitutional course of conduct would have been. Correct, correct. And it's a very good question. It deals with common sense. Officers probably should have observed as opposed to coming in late. Well, let's say they observed him doing precisely what the video cam shows him doing, which is consistent with what the caller said. Your view has to be that they can't do anything under those circumstances, doesn't it? Well, they can observe. They can— They can observe him, so can they follow him around for the rest of the day? Well, couldn't they ask a question? Consensual stop? I'm sorry? Consensual stop? Correct, correct. Couldn't they have observed and perhaps gone up to him and asked for his name, and he could have legally continued walking and said no? He said no. Could they then stop him? No. Legally. I mean, you may be right. What troubles me about this case is I'm trying to look at it from the context of a police officer who gets two citizen calls that there's bizarre behavior on the residential street of a guy with a gun and a mask. And the police officers do what seems reasonable. They go up there and say, put that in the gun, sir, and tell me who you are. And he says, I'm a convicted felon. And it was only one 911 call. There was actually a second person. Right. It wasn't a 911 call, but it was a second call. Right, right. Correct. But your view has to be that under the Constitution, they can't stop this guy. I think it's a tension that the district court grappled with. So tell me why I think it was Justice Brandeis who once said the Constitution is not a suicide pact. Isn't that essentially your view of this case? If he'd gone on and killed someone, those police officers would have been fired, wouldn't they? If we look at our precedent, if we look at the Supreme Court precedent, there are active actions that have consequences. Terry, for example, casing the business 24 times. Wardlow running in a neighborhood, a drug-infested neighborhood. Even Arvizu, it was near a border. And he was taking a back road as opposed to a regular road. In our case, as Judge Wynn mentioned, he was out in public. This was right after work. He was wearing a mechanic's jumpsuit. This was during COVID. He was wearing a mask. He was doing nothing active. He was not doing anything active. A brief Terry stop and reasonable suspicion is not ñ it doesn't take much to conduct a brief Terry stop. And we can look at everything. What about your colleague's argument that the tipster said he was occasionally peeking at his gun and trying to conceal it? That coupled with his odd behavior can be indicative of some mental health crisis or intoxication. And how do you grapple with those little additional bits of facts? Because it sounds like anybody and everybody could really have a concealed weapon. So that in and of itself is not enough. But there are people who are prohibited. And so the fact that he was trying to conceal it, that's indicative of something, isn't it? Well, I would respectfully differ. The 9-1-1 caller was following him. He probably thought the 9-1-1 caller was acting suspicious and weird by following him around. And remember, the 9-1-1 caller was very calm. He wasn't excited. He wasn't scared. But we're not looking for the subjective reactions of either the caller or the police. We're just looking at what these – if he were walking out of a bank attired exactly the same way and somebody called in and said a guy just left a bank doing exactly the same things, would the police have had reasonable suspicion to stop him? If he was leaving, if he was seen leaving the bank with a gun wrapped around over his back, possibly, yes. This neighborhood was a residential neighborhood. This was at 530. He was walking down a residential street. Sure, in broad daylight, after work. He'd leave the bank in broad daylight, too. Oh, sure, sure. I would ask the court to – Well, let me ask you before you sit down. What's your position on waiver? I know the government didn't argue intoxicated carrying of a gun below, but because this is an objective standard, not a subjective one, should we treat that argument as waived? I think you have to look at the Williams case, which is one that I've cited in my brief as well as the government has cited in its brief. You have a situation in Williams where the underlying conduct is there and the appellate opinion simply furnished the statute for it. Same with Guzman as well, simply furnished the statute. In this case, there wasn't underlying conduct of intoxication. I understand that point, but assuming that we think there's reasonable suspicion of intoxication, and I'm not asking you to concede that for a moment, can we supply the statute? I believe – I would submit that the government has waived that, but that because the court and because of – well, especially the court had considered intoxication because it was mentioned at the hearing. It was mentioned when after the stop on Excerpt 18, after the stop, when the officer engaged Mr. Vasquez, he was – he said a few stories, said two or three different stories, and because of that, he said it was erratic behavior, and that erratic behavior after the stop now allowed or made the police officer consider intoxication. Can you clear something up for me?  There has been mention of the fact, well, this is COVID, and he was wearing a mask, and so that's not an issue. But my understanding, and I might be wrong here, this is not – he wasn't wearing your typical N95-type mask that most of us were wearing in COVID times, and some people are wearing now. This was some sort of a thing with his eyes – eye holes cut out. It was like kind of akin to a home improvised ski mask, you know, one of these things that – isn't it? It was – it's a very good question, Judge Ezra. It was a bandana. I know that people have worn bandanas. It's not particularly effective, but they have worn bandanas. But it wasn't just over his nose and mouth. It was over his eyes too, wasn't it? Yes, yes. With holes cut in it? It covered his face with holes, yes. Have you ever seen anybody walking around like that? Have I ever seen – I – I haven't. I would say – I'd say that's somewhat unusual, wouldn't you? I would say it was – I would concede that. I would concede that, Judge Ezra. He was wearing the McBurglar mask when – There was a cartoon character that had a similar attire. McDonald's. McBurglar. Yes. That's right. From McDonald's. That's right. Well, we would ask – I didn't want to go there, but since my esteemed colleague has, I – Well, we would ask the court to respectfully affirm the district court's decision. Thank you very much. Thank you, counsel. Thank you. At the risk of correcting the court, I believe it's the Hamburglar that wears the mask like that. The McBurglar? Hamburglar, I believe. Hamburglar. You're right. Hamburglar. But I do want to make clear that there is actually, in fact, evidence in the record. At excerpts of the record, page 26, the officer does testify that this would be improperly worn as a COVID mask and is much – was more likely or was commonly the kind that the officer would expect to be used to conceal one's identity. And, again, I would emphasize here the fact that this is de novo review, the fact that reasonable suspicion is a low standard, and what the district court did not take into account, which we would ask this court to do, is this is a consistent pattern of – it's not just erratic or odd behavior. It is, I think, indicative of paranoia, but it certainly is indicative of a considered pattern of concealing one's identity in connection with his gun possession. Masked, dressed strangely, peeking at the gun, dodging the onlookers, and then the strange behavior with the lunges, which I do think is whether he was in his – there are obviously indications that he wasn't in his right mind. When someone isn't in their right mind, I don't think the district court's analysis with respect to saying, well, a burglar wouldn't do this, would be too obvious. This would be obvious. Obviously, he was, in fact, taking an effort to conceal himself, even though that was counterproductive. I do think that all amounts to reasonable suspicion, and the officers did the appropriate thing here. Thank you, Your Honors. All right, thank you to both sides for your argument in this case. Safeco Insurance Company versus Halverson is the next case up for argument.
judges: NGUYEN, HURWITZ, Ezra